# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5816 | **DATE** | 3/17/2004 |
| **CASE TITLE** | Piser vs. Lunn Partners, LLC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held. For the reasons stated in the attached memorandum opinion and order, defendant's motion to dismiss is granted. Plaintiffs may file a second amended complaint alleging federal jurisdiction within seven days of the date of this order, if they can do so consistent with Rule 11. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 18 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | | 16 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | CLERK | | |
| MF | courtroom deputy's initials | 2004 MAR 17 PM 4:29 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JONATHAN H. PISER, individually; and R. SCOTT ALSTERDA, as Trustee for the Bankruptcy Estate of NEWWORLDAIR HOLDINGS, INC., a Delaware corporation, Plaintiffs, v. LUNN PARTNERS, LLC, a Delaware limited liability company; INDIGO D-2 INVESTORS, LLC, a Delaware limited liability company; INDIGO D-2 INVESTORS, INC., a Delaware corporation; and ROBERT J. LUNN, individually, Defendants. | No: 03 C 5816 Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Jonathan H. Piser and R. Scott Alsterda, as Trustee (the "Trustee") for the Bankruptcy Estate of NewWorldAir Holdings, Inc. ("NewWorldAir"), filed a seven-count Amended Complaint against Defendants, Lunn Partners, LLC ("Lunn Partners"); Indigo D-2 Investors, LLC ("Indigo LLC"); Indigo D-2 Investors, Inc. ("Indigo Inc."); and Robert J. Lunn. Presently before the Court is Defendants' Motion to Dismiss the Amended Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, that motion is granted in part and denied in part.

## LEGAL STANDARD

In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). A plaintiff is not required to plead the facts or elements of a claim, with the exceptions found in Federal Rules of Civil Procedure 9. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002); *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002) (*Walker*). Dismissal is warranted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The "suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

However, "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). In order to survive dismissal, the plaintiff must plead the who, what, when, and where of the alleged fraud. *See Lachmund v. ADM Investor Serv., Inc.*, 191 F.3d 777, 782 (7th Cir. 1999) (quotations omitted). "The allegations must be specific enough to provide the defendants with a general outline of how the alleged fraud scheme operated and of their purported role in the scheme." *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 347 (N.D. Ill.1997) (citations omitted). To determine whether counts are sufficiently pled, a court will bear in mind the purposes of Rule 9(b): "(1) protecting the defendants' reputations; (2) preventing fishing expeditions; and (3) providing adequate notice to the defendants." *Rohlfing*, 172 F.R.D. at 347 (citing *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir.1994)).

## BACKGROUND

The facts, for the purposes of this motion, are taken as true from Plaintiffs' Amended Complaint. Piser, a resident of Illinois, is a shareholder of NewWorldAir and a member of its Board of Directors. NewWorldAir is a Delaware corporation that owned and operated Indigo, a commercial-scheduled charter airline service operating out of Chicago's Midway Airport. On August 19, 2003, NewWorldAir filed a voluntary petition under Chapter 7 of the Bankruptcy Code.

Lunn, a resident of Illinois, is a stockholder and member of the NewWorldAir Board of Directors. Lunn Partners is in the business of investment banking, real estate development, and financial advisory services. Indigo LLC and Indigo Inc. are both organized under Delaware law and were formed in connection with raising working capital for NewWorldAir.

In 1998, NewWorldAir was formed and began doing business under the Indigo name. On May 24, 2000, NewWorldAir entered into a sublease with Ameritech Corporation ("Ameritech") for a hangar facility at Midway Airport. On May 31, NewWorldAir entered into an Assignment and Assumption Agreement with Ameritech, which, as amended, contemplated an assignment of Ameritech's leasehold interest in the hangar facility to NewWorldAir, subject to a payment by NewWorldAir of $3.1 million and the approval of the lessor, the City of Chicago. In August 2000, NewWorldAir began providing air service using four leased airplanes.

In July 2002, NewWorldAir executed an agreement with Embraer-Empresa Brasileria de Aeronautica S.A. ("Embraer") for the rolling purchase of twenty-five Embraer jets. On July 5, 2002, pursuant to the terms of the Purchase Agreement, Embraer paid $5 million to NewWorldAir in the form of an unearned rebate. At the time the $5 million rebate was received

from Embraer, NewWorldAir was already facing mounting debts and was unable to meet its obligations as they came due.

NewWorldAir was unable to meet its obligations to companies and individuals, such as Bizjet, Inc.; Kardan, Inc.; Daniel Lee; Boston Consulting Group; and Ameritech. Lunn, who assumed effective ownership and management of NewWorldAir, began directing the assets of NewWorldAir to entities he owned and controlled, such as Lunn Falcon LLC.

In the summer of 2002, Lunn met with Piser to discuss a potential sale of a portion of Lunn's NewWorldAir stock to Piser. During the meeting, Lunn represented to Piser that: (1) the business of NewWorldAir was sound and the balance sheet was clean because all outstanding liabilities of the company had been paid with the initial funds received from Embraer; (2) the company intended to seek additional capital through an offering of Series D Preferred stock (the "Series D Raise"); (3) the company needed an additional $10 million; (4) two investors, Robert Shaw and Julian Saul, had committed to invest $5 million in NewWorldAir; (5) if the Series D Raise failed to raise the remaining $5 million, Lunn would provide the balance from his personal fund; (6) if Piser purchased the stock, his interest could not be diluted except by the Series D Raise; and (7) no investor would receive any money out of NewWorldAir unless all investors received an amount *pari passu* with the amount each invested.

Based on these representations, Piser then offered to purchase common stock from Lunn for $250,000 on four conditions. First, Piser must obtain no less than 2.5% of the outstanding stock of NewWorldAir. Second, Piser's ownership would not be diluted, except by the Series D Raise. Third, no investor would receive any money out of NewWorldAir unless all investors

received money out of NewWorldAir *pari passu* with their investments. Finally, Piser must obtain a seat on the NewWorldAir Board of Directors.

In the fall of 2002, Lunn introduced Shaw and Saul to NewWorldAir and represented that they had agreed to make a $5 million investment in NewWorldAir. Lunn failed to disclose that Lunn Partners entered into a written, secret, side agreement with Shaw and Saul whereby $2 million of the $5 million would be used to purchase stock in the Series D Raise and that the remaining $3 million would be placed in escrow with NewWorldAir's attorneys, Pedersen & Houpt. The $3 million placed in escrow would be used to purchase the rights of NewWorldAir under the Ameritech Sublease on behalf of Shaw and Saul's company, MDW Investors LLC ("MDW"). NewWorldAir then agreed to an Assignment and Assumption Agreement, by which MDW agreed to pay $3.1 million to NewWorldAir for an assignment of NewWorldAir's rights under the Ameritech Sublease and to purchase stock in NewWorldAir. Under the new agreement with MDW, NewWorldAir agreed to seek approval to transfer the leasehold interest to MDW. In the event the City of Chicago approved the transfer of the Ameritech Sublease to MDW and NewWorldAir could pay the balance due Ameritech, MDW would own NewWorldAir's rights under the sublease to the Midway Airport hangar facility. In the event the transfer was not approved, Lunn Partners agreed to return the $3 million to Shaw and Saul.

On October 31, 2002, NewWorldAir engaged Lunn Partners as its exclusive financial advisor for the purpose of effectuating the capital raise and private placement. In November 2002, Woodland Financial Group, LLC ("Woodland") agreed to loan $500,000 to NewWorldAir. As of November 15, 2002, the operating account of NewWorldAir showed a negative balance; and NewWorldAir had outstanding unpaid obligations in excess of $5 million.

On or about November 27, 2002, Woodland paid the $500,000 to Lunn Partners for use by NewWorldAir; but Lunn Partners only transferred $180,000 to NewWorldAir. Lunn failed to disclose the terms of this loan by Woodland to the NewWorldAir Board of Directors.

On December 3, 2002, Shaw and Saul wired $3.1 million to Pedersen & Houpt, who promptly paid $500,000 to American Express Travel Services to settle an existing debt of NewWorldAir and wired the remaining $2.6 million to NewWorldAir; $710,000 of this $2.6 million was paid to Lunn Partners, and $100,000 was applied to the purchase of 1,298,702 shares of NewWorldAir Series D-1 Preferred stock issued to Shaw and Saul. This action diluted the interest in the company held by Piser, who held approximately 1.8% of the NewWorldAir stock.

In January 2003, NewWorldAir prepared and issued two documents, each entitled "Private Placement Memorandum," designed to entice investors to make investments in NewWorldAir. Lunn Partners and Lunn utilized the Private Placement Memorandum to solicit investment in Indigo LLC, which was formed as part of the efforts to raise working capital for NewWorldAir.

In February 2003, Shaw and Saul provided the remaining $1.9 million of the $2 million commitment in the Series D Raise. At that time, Lunn represented to the Board of Directors that those funds had been received by NewWorldAir. However, Lunn and Lunn Partners refused to transmit $447,000 of the funds to NewWorldAir. On or about February 25, 2003, Lunn directed that NewWorldAir make a loan of $460,000 to Indigo LLC but never disclosed this loan to the NewWorldAir Board of Directors. On April 28, 2003, Peter Pappas, Chairman of the Board of Directors, made a presentation about NewWorldAir's need for cash and asked for the release of

the $447,000. Lunn and Lunn Partners claimed they cannot release the $447,000 without authority from Shaw and Saul.

## ANALYSIS

Lunn seeks to dismiss Count I, Piser's federal claim, a violation of the Securities Act of 1934, for a failure to state a claim. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. Lunn also seeks to dismiss Piser's three state law claims in Counts II-IV, a claim under Section 12 of the Illinois Securities Law of 1953, 815 ILCS 5/12; a common law fraud claim; and a claim for negligent misrepresentation. Lunn and the other Defendants also seek to dismiss the Trustee's state law claims for lack of subject matter jurisdiction.

### *Federal Claims*

To state a violation of Rule 10b-5, Piser must plead each of the following elements: (1) a misstatement or omission of material fact; (2) scienter; (3) a purchase or sale of securities; (4) justifiable reliance; and (5) damages proximately caused by the misstatement or omission. *In re Healthcare Compare Corp. Sec. Litig.*, 75 F.3d 276, 280 (7th Cir. 1996). Defendants advance two reasons for why Piser's Rule 10b-5 claim, embodied in Count I, should be dismissed. First, Defendants contend that Piser failed to adequately plead any material misstatements or omissions. Secondly, Defendants claim that Piser failed to plead Lunn acted with scienter.

The Private Securities Litigation Reform Act ("PSLRA") imposes specific pleading requirements on plaintiffs who allege violations of Rule 10b-5. When alleging a statement was an untrue statement of material fact, a plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with

7

particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Plaintiff also must "state with particularity facts giving rise to the strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

Defendants assert that Lunn's alleged misrepresentations regarding NewWorldAir's balance sheet as clean and its financial condition as sound constitute "puffing" – general, optimistic statements that are not capable of being objectively verified – and are, thus, not actionable. *See Eisenstadt v. Centel Corp.*, 113 F.3d 738, 746 (7th Cir. 1997) (*Eisenstadt*).

If puffing statements reinforce factual misstatements and contribute to deceiving an investor, those statements may be actionable. *In re Sears, Roebuck, & Co. Sec. Litig.*, 291 F. Supp. 2d 722, 726 (N.D. Ill. 2003). However, statements claiming a business is sound or that an investor would profit, with nothing more, constitute puffing and are not actionable. *Waxman v. Envipco Pick Up & Processing Servs., Inc.*, No. 02 Civ. 10132, 2003 WL 22439796, at *9 (S.D.N.Y. Oct. 28, 2003).

Here, Piser alleged that numerous unpaid and undisclosed liabilities existed to companies such as Bizjet, Inc.; Kardan, Inc.; Daniel Lee; Boston Consulting Group; and Ameritech. Piser further alleged that NewWorldAir received a $5 million payment from Embraer in July 2002. Lastly, Piser contends that Lunn directed NewWorldAir to fund a "settlement" with some of Lunn's companies, thus compromising the financial condition of NewWorldAir.

However, Piser has failed to adequately plead these allegations were false when they were made. *See, e.g., Johnson v. Tellabs, Inc.*, 262 F. Supp. 2d 937, 951 (N.D. Ill. 2003). Instead, Piser's allegations only list liabilities which existed at the time NewWorldAir received the $5 million payment from Embraer but not at the time Lunn allegedly made these statements.

Furthermore, Piser did not allege any facts explaining that NewWorldAir failed to use the Embraer money to pay the existing liabilities. Finally, although Piser alleges Lunn directed NewWorldAir to pay some of Lunn's companies, these allegations contain no facts explaining how these payments negatively affected the balance sheet and financial condition of NewWorldAir in July and August 2002.

Accordingly, Piser's allegations regarding Lunn's alleged statements about the balance sheet and financial condition of NewWorldAir are not actionable and fail to state a claim under Rule 10b-5.

Piser next relies on two statements, in connection with the Series D Raise, that allegedly are in violation of Rule 10b-5. First, Piser argues that Lunn, who stated that NewWorldAir needed an additional $10 million to complete purchases, misrepresented that he received, on behalf of NewWorldAir, a commitment for $5 million from Shaw and Saul. Secondly, Piser claims Lunn misrepresented that he would provide the balance to NewWorldAir from his personal funds in the event the Series D Raise failed to obtain the needed $10 million.

As to the first statement, Defendants argue that the Shaw and Saul investment eventually went to NewWorldAir; thus, the statement was not a misrepresentation. While it is true that this commitment was eventually paid to NewWorldAir, fraud cannot be disproved by hindsight. *See In re: Hartmarx Sec. Litig*, No. 01 C 7832, 2002 WL 653892, at *3 (N.D. Ill. Apr. 19, 2002) (*Hartmarx*). However, Piser must show that facts existed demonstrating that Lunn's statement was false when made. *See Hartmarx*, 2002 WL 653892, at *3.

Piser, in his attempt to prove Lunn's statement was false, alleges that, on information and belief, Shaw and Saul had entered into a written agreement with Lunn and Lunn Partners at the

9

time Lunn conveyed his statements to Piser that was unbeknownst to NewWorldAir. This written agreement allegedly required Shaw and Saul to place approximately $3 million into an escrow fund for the purchase of the leasehold interest on the hangar facility and not to use those funds for the operations of NewWorldAir.

As noted above, 15 U.S.C. § 78u-4(b)(1) requires "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." To satisfy this requirement, Piser must provide documentary evidence or a sufficient general description of the confidential, personal sources his information and belief is based upon. *Johnson v. Tellabs, Inc.*, 262 F. Supp. 2d 937, 946 (N.D. Ill. 2003) (citing *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000) (*Novak*)).

In this case, Piser has not presented any documents or general personal description of any confidential or personal sources upon which he bases his information and belief. Moreover, Piser even states in his Complaint that Shaw and Saul transmitted $3.1 million to NewWorldAir's trust account on December 3, 2002, and that in February 2002, Shaw and Saul paid the balance of their $5 million commitment. Thus, under the PSLRA, Piser's allegations for this alleged misrepresentation are not properly pled.

As to the second statement, Piser has also failed to allege any facts, as he is required to under the PSLRA, demonstrating that Lunn would not be able to pay the balance of the $10 million not obtained in the Series D Raise. Piser admits that he does not have access to the personal affairs of Lunn. Rather, Piser pled that he sent a letter, attached to the Amended Complaint, to Lunn in June 2003, attempting to discern why the balance of the $10 million was not paid; according to Piser, Lunn's failure to respond is a strong inference that Lunn did not

10

have the money.

However, Piser has failed to allege any facts regarding the value of Lunn's personal assets in the summer of 2002, when the statements were made. Moreover, Piser failed to properly plead that a shortfall existed in the Series D Raise such that Lunn would need to pay the balance of the $10 million. Finally, Piser's own self-serving letter fails to support the inference that Lunn did not possess the funds to pay off the outstanding balance of the Series D Raise. *See N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 456 (7th Cir. 1998) ("Letters written by [a party may contain self-serving statements . . . ."). Therefore, Piser's allegations for this alleged misrepresentation are not properly pled and are dismissed.

Lunn also argues that Piser's allegations concerning the representations to grant Piser a board seat, to not dilute Piser's 2.5% share in NewWorldAir except through the Series D Raise, and that the investors would receive distributions in amounts *pari passu* with their investments were not included as part of the contract to purchase NewWorldAir stock. Lunn points out these terms are not included in the contract, attached as an exhibit to the Amended Complaint.

However, a contract without an "anti-reliance" clause does not affect a plaintiff's ability to assert claims for an "antecedent oral fraud." *Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Co.*, 910 F.2d 1540, 1545-46 (7th Cir. 1990). Piser asserts, and Lunn does not dispute, that the contract at issue here does not contain an "anti-reliance clause."

Lunn next challenges the sufficiency of these allegations by asserting that Piser failed to adequately plead the statements were false when made. As to the representation that Piser's 2.5 % share of NewWorldAir stock would not be diluted except through the Series D Raise, Piser asserts that the written agreement with Shaw and Saul would have diluted his interest in the

11

company. However, as discussed above, this written agreement was alleged on "information and belief"; and Piser did not state the source of his information.

Similarly, Piser alleges that Lunn and Lunn Partners could receive monies from NewWorldAir ahead of other investors and not *pari passu* with the amount of their investments. Piser further contends that Lunn and Lunn Partners took money out of the company both before and after Piser's stock purchase. A review of these allegations, however, indicates that Piser is again relying on "information and belief" in pleading these events. Accordingly, these allegations do not state a claim under Rule 10b-5.

Piser's allegations about the board seat are not actionable. Piser, in the Amended Complaint, pleads that he is a member of the NewWorldAir Board of Directors. Piser argues that fraud cannot be disproved by hindsight. *See Hartmarx*, 2002 WL 653892, at *3. Piser, though, must allege that facts existed demonstrating that Lunn's statement was false. *See Hartmarx*, 2002 WL 653892, at *3. Piser has failed to make these allegations; and, therefore, his statements about the board seat are not actionable under Rule 10b-5.

Accordingly, Piser has failed to properly plead any actionable federal claims.

*Jurisdiction over the Trustee's State Law Claims*

Defendants seek to dismiss the Trustee's three state law counts: (1) a claim for breach of fiduciary duty, (2) a breach of contract claim, and (3) a claim for conversion. According to Defendants, no basis for federal jurisdiction exists for these claims.

In Response, the Trustee contends that original jurisdiction is conferred on these state law claims under 28 U.S.C. § 1334(b). Under § 1334(b), "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to

12

cases under title 11." According to the trustee, the "related to" jurisdiction under § 1334(b) includes contract and tort claims asserted by and against the debtor. *See Bear Stearns Sec. Corp. v. Cho*, No. 02 C 4419, 2002 U.S. Dist. LEXIS 18253, at *6 (N.D. Ill. Sept. 17, 2002) (*Cho*).

As the Trustee concedes, though, claims asserted in a district court pursuant to § 1334(b) are automatically referred to the bankruptcy court for this district. 28 U.S.C. § 157(a); Internal Operating Procedure 15(a) for the Northern District of Illinois; *Cho*, 2002 U.S. Dist. LEXIS 18253, at *6.

The Trustee next argues that his claims are subject to a jury trial, and the bankruptcy court is not authorized to conduct a jury trial without the consent of the parties. 28 U.S.C. § 157(e). Therefore, according to the Trustee, he could file his claims in the bankruptcy court and then seek to have the bankruptcy reference withdrawn for cause, pursuant to 28 U.S.C. § 157(d), based upon his right to a jury trial. *See Steege v. N. Trust*, No. 96 C 742, 1996 U.S. Dist. LEXIS 8311, at *3 (N.D. Ill. June 12, 1996) (*Steege*).

However, the Trustee may not automatically and immediately withdraw the reference to the bankruptcy court simply because he contends these claims would eventually end up in district court. First, it is not enough for a party to contend it has a right to a jury trial for a bankruptcy reference to be withdrawn; rather, the claims asserted must also be considered non-core proceedings. *Steege*, 1996 U.S. Dist. LEXIS 8311, at * 3. Secondly, the parties must also refuse to have their claims adjudicated before a jury in the bankruptcy court. *Steege*, 1996 U.S. Dist. LEXIS 8311, at *3. Finally, even if the reference to the bankruptcy court could be withdrawn, the district court may permit the bankruptcy court to proceed with discovery and pre-trial

motions. The district "court may wait until the case is ready to go to trial before withdrawing the reference." *In re Dreis & Krump Mfg. Co.*, No. 94 C 4281, 1995 WL 41416, at *3 (N.D. Ill. Jan. 31, 1995). Therefore, at this time, jurisdiction is lacking over the Trustee's state law claims.

*Supplemental Jurisdiction over Plaintiffs' State Law Claims*

Lunn seeks to dismiss Piser's three state law counts: (1) a claim under Section 12 of the Illinois Securities Law of 1953, 815 ILCS 5/12; (2) a common law fraud claim; and (3) a claim for negligent misrepresentation. Defendants also seek to dismiss the Trustee's three state law counts for lack of subject matter jurisdiction. Because Plaintiffs have failed to allege any basis for federal jurisdiction, it would be improper to accept supplemental jurisdiction at this time, pursuant to 28 U.S.C. § 1367, over their state law claims. *See, e.g., Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294, 300 (7th Cir. 2003).

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted. Plaintiffs may file a second amended complaint alleging federal jurisdiction, if they can do so consistent with Rule 11.

Dated: March 17, 2004

JOHN W. DARRAH
United States District Judge

14